**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3915-18T3

MICHAEL WILLERSON,

 Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

 Respondent.

Submitted May 27, 2020 – Decided June 9, 2020

Before Judges Accurso and Rose.

On appeal from the New Jersey Department of Corrections.

Michael Willerson, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Beonica McClanahan, Deputy Attorney General, on the brief).

PER CURIAM

Michael Willerson appeals a final decision of the Department of Corrections, finding him guilty of prohibited act *.004, fighting with another person, N.J.A.C. 10A:4-4.1(a)(2)(i), and imposing a 120-day administrative segregation sanction, 60-day loss of commutation time, and 10-day loss of recreational privileges. On appeal, Willerson argues the guilty finding was not supported by substantial evidence and the sanctions imposed were excessive. We disagree and affirm.

Willerson is an inmate in the State's correctional system. Shortly after 7 a.m. on April 11, 2019, while incarcerated at Southwoods State Prison, Willerson and another inmate engaged in a fistfight in the dayroom. No one reported the fight to the authorities. Four days later, while reviewing the weekly footage of the dayroom's video recording, Sergeant Jackson noticed the physical altercation and identified the participants as Willerson and V.P.[1] Both inmates told Jackson "they were fighting to settle a dispute." The following day, Willerson was served with the charge. Willerson pled not guilty, his request for counsel substitute was granted, and he was afforded a hearing.

Counsel substitute viewed the video of the incident, but Willerson declined the opportunity to do so. Willerson also declined the opportunity to

---

[1] We use initials in conformance with the Department's responding brief.

cross-examine the Department's witnesses. Claiming V.P. attacked him and he acted in self-defense, Willerson called two witnesses on his behalf, who apparently were present in the dayroom at the time of the incident. But neither witness corroborated his account. One witness said he "didn't see anything" and the other stated he "was looking at T.V." at the time of the incident. Counsel substitute requested leniency.

Following her review of the evidence, including the video recording, the hearing officer rejected Willerson's self-defense claim and found Willerson guilty of fighting. In reaching her decision, the hearing officer noted Willerson "may not have been the aggressor, but he threw the first punch. He never tried to retreat or call for assistance." In assessing the sanction, the hearing officer considered Willerson's absence of mental health problems and the need to take seriously violent acts within the prison to "promote a safe and secure facility." Thereafter, the assistant superintendent upheld the hearing officer's decision, finding the Department "compli[ed] with procedural safeguards" and the sanction appropriate. This appeal followed.

On appeal, Willerson raises four points for our consideration:

POINT I

THE HEARING OFFICER ERRED IN FINDING
[WILLERSON] GUILTY BECAUSE [WILLERSON]

3

USED ONLY FORCE NECESSARY TO THWART ATTACK.

POINT II

THE COURTLINE HEARING OFFICER ERRED IN NOT APPLYING THE SELF-DEFENSE FACTORS AS NOTED IN DECAMP V. [N.J. DEP'T. OF CORR., 386 N.J. SUPER. 631 (2006)].
(Not Raised Below)

POINT III

THE HEARING OFFICER ERRED AND VIOLATED [WILLERSON']S RIGHT TO DUE PROCESS BY VIOLATING HIS RIGHT TO EQUAL PROTECTION BY SANCTIONING [WILLERSON] TO THE MAXIMUM AND GIVING [WILLERSON] THE SAME ADMINISTRATIVE SEGREGATION SENTENCE AS [V.P.,] WHO INITIATED THE ATTACK.

POINT IV

THE HEARING OFFICER ERRED IN THE FINDING OF GUILTY BECAUSE [WILLERSON']S DU[E] PROCESS WAS VIOLATED WHEN [WILLERSON] WAS CHARGED (4) FOUR DAYS LATER AND ATTACKER ADMITTED HE INITIATED THE ALTERCATION AND ADMITTED GUILT.
(Not Raised Below)

In his reply brief, Willerson raises three additional points:

POINT I

4                                                    A-3915-18T3

[WILLERSON] DISPUTES [THE DEPARTMENT']S BALD ASSERTION THAT THE INCIDENT WAS DUE TO A DISPUTE.

## POINT II

THE [DEPARTMENT]'S CONTRADICTORY ASSESSMENT OF THE FACTS SUPPORTING AND NON-SUPPORT OF SELF-DEFENSE [SIC] SHOULD WARRANT A REVERSAL OF [WILLERSON']S SANCTION.

## POINT III

[THE DEPARTMENT']S CLAIMS [WILLERSON] COULD HAVE RETREATED VIOLATES THE STANDARD FOR SELF-DEFENSE.

Our well-established scope of review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011); see also Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010); see also Avant v. Clifford, 67 N.J. 496, 530 (1975).

When reviewing a final determination of the DOC in a prisoner disciplinary matter, we consider whether there is substantial evidence the inmate has committed the prohibited act and whether, in making its decision, the DOC followed the regulations adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-98 (1995). We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result.'" In re Carter, 191 N.J. 474, 483 (2007) (internal quotation marks omitted). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Stallworth, 208 N.J. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). But, an agency's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Willerson argues he was defending himself against an unprovoked attack from inmate V.P. He claims N.J.A.C. 10A:4-9.13(f) allows an inmate to raise self-defense in circumstances such as here. N.J.A.C. 10A:4-9.13(f), which superseded our decision in DeCamp v. New Jersey Department of Corrections,

386 N.J. Super. 631 (App. Div. 2006),[2] on which Willerson also relies, provides, in relevant part:

> The Disciplinary Hearing Officer or Adjustment Committee will allow an inmate to raise self-defense to a prohibited act involving the use of force among inmates; however, the inmate claiming self-defense shall be responsible for presenting supporting evidence that shall include each of the following conditions:
>
> 1. The inmate was not the initial aggressor;
>
> 2. The inmate did not provoke the attacker;
>
> 3. The use of force was not by mutual agreement;
>
> 4. The use of force was used to defend against personal harm, not to defend property or honor;
>
> 5. The inmate had no reasonable opportunity or alternative to avoid the use of force, such as, by retreat or alerting correctional facility staff; and
>
> 6. Whether the force used by the inmate to respond to the attacker was reasonably necessary for self-defense and did not exceed the amount of force used against the inmate.

Contrary to Willerson's argument on appeal, the hearing officer applied these factors. Although she acknowledged Willerson "may not have been the

---

[2] After we issued the <u>DeCamp</u> decision, the Department adopted N.J.A.C. 10A:4-9.13(f), providing a self-defense claim in a disciplinary proceeding and placing the burden of proof on the inmate.

[initial] aggressor" (factor one), the hearing officer found Willerson offered no evidence that he could not "retreat or alert[] correctional facility staff" (factor five), other than his bare assertion that he "was defending himself and was attacked." Indeed, Willerson's witnesses denied they observed the fight let alone that Willerson was unable to retreat or call for help.

Further, by finding Willerson "threw the first punch," the hearing officer implicitly found Willerson failed to satisfy the sixth factor, having "exceed[ed] the amount of force used against [him]." We note the record is also devoid of any evidence that Willerson demonstrated the remaining factors. Accordingly, the record does not support Willerson's claim of self-defense, which was properly rejected by the hearing officer.

Next, we find nothing either manifestly excessive or unduly punitive in the sanctions imposed, which were authorized and warranted. See N.J.A.C. 10A:4-4.1 and N.J.A.C. 10A:4-5.1. Under those regulations, the Department was permitted to seek: "no less than 91 days and no more than 180 days of administrative segregation," N.J.A.C. 10A:4-5.1(g); up to 365 days of commutation time, N.J.A.C. 10A:4-5.1(g)(2); and up to 30 days loss of

privileges N.J.A.C. 10A:4-5.1(g)(1). The sanctions imposed here were well within the prescribed ranges, and were the same as those imposed on V.P.[3]

Contrary to Willerson's argument, the sanctions also were imposed fairly and in accordance with the principles mandated under N.J.A.C. 10A:31-16.1[4] and, as such, we find no merit in Willerson's argument that his sanctions should have been less severe than those imposed on V.P, who initiated the "attack." As stated, Willerson failed to prove he acted in self-defense or otherwise acted less culpably than V.P. Recognizing "[p]rohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions,"

---

[3] V.P.'s adjudication is not contained in the record on appeal, but the parties do not dispute that both inmates received the same sanctions.

[4] N.J.A.C. 10A:31-16.1 provides, in pertinent part:

> (a) Equitable and consistent inmate discipline shall be employed to ensure the maintenance of security and the orderly operation of all adult county correctional facilities.
>
> (b) Rules, upon which inmate discipline is based, must be reasonable and evenly applied, and the action taken to determine an alleged infraction must be based on findings of fact.
>
> (c) The sanction(s) for infractions shall not be imposed in any manner that violates the inmate's civil rights. The sanction(s) must be related to the infraction, and must be fairly applied to all inmates. . . .

A-3915-18T3

N.J.A.C. 10A:4-4.1(a), we discern no basis to intercede. See Blyther v. N.J. Dep't of Corr., 322 N.J. Super. 56, 67 (App. Div. 1999) (suggesting courts should not involve themselves in the day-to-day management of prisons).

For the first time on appeal, Willerson claims his due process rights were violated because he was served with the charges "ninety-six hours after the incident and was adjudicated fifty . . . hours later." Because Willerson failed to raise it before the hearing officer, we could decline to consider this issue. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012). Nonetheless, we have reviewed Willerson's arguments and conclude they lack merit.

Willerson seemingly argues the Department failed to serve the disciplinary report on him within the forty-eight-hour period mandated under N.J.A.C. 10A:4-9.2. But the fight remained undetected for four days until Jackson viewed the video. Willerson was served the following day and afforded a hearing within two days. Counsel substitute signed the hearing officer's adjudication report, indicating it accurately reflected what occurred at the hearing. Notably, the report cites no procedural deficiencies. Instead, Willerson was afforded counsel substitute, and given the opportunity to provide a

10

statement, call witnesses, cross-examine the Department's witnesses, and review the video recording before an impartial tribunal. We perceive no constitutional infringements in this procedure.

We conclude there was substantial evidence in the record to support the agency's decision based on the reports and evidence submitted at the hearing. The Department's decision was not arbitrary, capricious or unreasonable.

To the extent not specifically addressed, Willerson's remaining arguments lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                        A-3915-18T3